FINANCE CO. OF PENNSYLVANIA *v.* CHARLESTON, C. & C. R. Co.

*(Circuit Court, D. South Carolina.* November 19, 1891.)

RAILROAD COMPANIES—FORECLOSURE OF MORTGAGE—LIENS FOR SUPPLIES—PRIORITIES.
Persons who furnish labor, supplies, and materials to a railroad, in order to keep it a going concern, are entitled to payment out of the earnings thereof before the payment of any interest on the mortgage bonds; and if, in a suit to foreclose, it appears that money due upon claims of this nature has been paid out as interest on the bonds, or for permanent improvements, whereby the bondholders have been benefited, the court will order an amount equal to the sum so diverted to be paid upon such claims out of any earnings in the hands of the receiver, or, failing these, out of the proceeds of the sale.

In Equity.

Suit by the Finance Company of Pennsylvania against the Charleston, Cincinnati & Chicago Railroad Company to foreclose a mortgage. Mr. D. H. Chamberlain was appointed permanent receiver of the road February 25, 1891. See 45 Fed. Rep. 436. The hearing is now upon interventions by the Pocahontas Canal Company, Atlanta Rubber Company, Westinghouse Air-Brake Company, Fairbanks, Morse & Co., Smith & Courtney, Hermann Baruch, the Mecklenburg Ice Company, Wm. Bird & Co., and others, claiming superior liens for supplies, etc., furnished prior to the receivership.

*B. A. Hagood, A. M. Lee, Huger G. Sinkler,* and *Buist & Buist,* for claimant.

*Samuel Lord,* for defendant.

SIMONTON, J. These are all interventions in the main case. Each of them is for supplies and materials, necessary for the maintenance of a railroad. With very few exceptions, the supplies and materials were furnished within the six months preceding the appointment of the receiver. They pray payment out of the income of the road while it is in the hands of the receiver, and, failing this, that they may be paid out of the proceeds of the sale when it is made, in priority to the mortgage debt, or that receiver's certificates may now be issued to them in payment.

This doctrine seems to be established in the decisions of the supreme court, and laid down in those of the circuit courts of the United States: Railroad property, when the railroad is a going concern, differs from all other property, in this: If the mortgage creditors ask the aid of the court in foreclosing their lien, they can be put upon terms. Before the property is taken out of the hands of the legal owner and put into that of a receiver, provision must be made for the payment of balances due to connecting lines, and for the satisfaction of certain favored claims, such as wages for laborers, employes, and the like, accruing within a certain time before the application for a receiver. This condition seems to be imposed within the discretion, and to rest only in the discretion, of the court. *Thomas* v. *Railway Co.*, 36 Fed. Rep. 817. And if in the course of investigation it shall appear that there are still unpaid creditors who furnished supplies and materials necessary for running the road, and that interest has been paid on mortgage bonds, or permanent improvements made, out of the earnings during the period when such debts were contracted, the court which has appointed the receiver will order the amount so used for interest or improvements to be brought in for the benefit of this class of creditors, either from earnings in the hands of the receiver, or, failing these, from the *corpus* of the property. *Fosdick* v. *Schall*, 99 U. S. 235; *Thomas* v. *Railway Co.*, *supra*, 818, 819, where all the authorities are collected. The principle is this: A railroad is of public concern. It is operated and kept in operation for the benefit of stockholders, mortgage bond holders, and the public. All of them are deeply interested in keeping it a going concern. This is the object for which it was chartered, was clothed with great privileges, and was finally constructed. Those who contributed to keeping it a going concern frequently continue their contributions when ordinary enterprises would lose all credit. They deserve and receive all the assistance the courts can give them without violating the essential right of property. So, when made a going concern a railroad earns an income; that income must first be applied to the expenditures necessary to keep it going. After these are paid, and not before, the earnings may be applied for the benefit of the mortgage creditors by way of interest on their bonds, or by enhancing their security by permanent improvements on the property, and to the payment of dividends to stockholders. This is the normal and just disposition of the earnings of a railroad company. Notwithstanding this, if the company be not declared insolvent, or if no application be made in its behalf for the assistance of a court of equity, the persons holding claims for labor and necessary supplies and materials have no position superior to any general creditor. They have no lien or claim upon the earnings, and if they seek payment, and it be refused, are put to their suit at law as an ordinary creditor. But if the railroad company come into or is brought into court, and it appears that within a reasonable time before this the normal and just disposition of its earnings has been disturbed, and that the mortgage bondholders have received interest from these earnings, or that, in part or in whole, these earnings have been used for their advantage, or for that of stockholders, leaving laborers, material-

men,—persons who have furnished necessary supplies,—unpaid, then the courts create an equity in favor of this latter class. They follow the sums so diverted from the just and normal mode of distribution. They order it restored, primarily, out of such earnings as the receiver may have. If these prove deficient, the restoration is made out of the *corpus*, which has been improved or made productive by the diversion. Necessarily this equity springs out of, depends entirely on, the diversion. Were it not for this diversion,—this taking of the money justly applicable to one class and using it for the benefit of another,—the equity could not exist. If there be no earnings, or if the earnings are insufficient to pay expenses, and there be no permanent improvements made, and no interest whatever paid, upon no principle of law or equity could the bondholder be made to pay out of his own property the debts of the common debtor. This would be not only a thorough disregard of the sanctity of a contract obligation, (*Kneeland* v. *Trust Co.*, 136 U. S. 97, 10 Sup. Ct. Rep. 950,) it would be confiscation of property. So all these conditions must concur before the equity will be applied. The railroad company must have been kept a going concern. The creditor must have aided with necessary material, supplies, or equipment in so keeping it a going concern. It must have made earnings. These earnings must have been used, in whole or in part, in the payment of interest, or in making permanent improvements, or for the benefit in some way of the mortgage creditors or stockholders. See *Burnham* v. *Bowen*, 111 U. S. 782, 4 Sup. Ct. Rep. 675. When all these concur, a court of equity, which is called upon to foreclose the mortgage or to administer the affairs of the company, will see to it that all earnings which may have been diverted from their proper disposition will be restored from earnings in the hands of the receiver, and, these failing, from the *corpus*.

In the present cases there was developed at the hearing great difference as to certain facts. Let G. W. Dingle, special master, inquire whether the Charleston, Cincinnati & Chicago Railroad ever earned any income. Was any portion of it, and when, applied to the payment of interest, or to any permanent improvement of the property, or in any way for the benefit of the bondholders? How much? And let him report this with all convenient speed.